**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**ANTONIO M. ROSS**                                                          **PLAINTIFF**

**v.**                                                    **CASE NO. 1:20-cv-00351-HSO-BWR**

**SHERMAINE SULLIVAN,** *Chief*                               **DEFENDANTS**
***Deputy United States Marshal's***
***Service,*** **et al.**

## REPORT AND RECOMMENDATION

BEFORE THE COURT is a suit filed *pro se* and *in forma pauperis* by postconviction federal prisoner Plaintiff Antonio Ross, who alleges that while in the custody of the Federal Bureau of Prisons (BOP) and housed as a pretrial detainee at Stone County Regional Correctional Center (SCRCF) in Stone County, Mississippi, he was denied timely and adequate medical treatment, which he claims caused Stage 4 kidney failure. The remaining Defendants in this suit are the United States, Chief Deputy United States Marshal Shermaine Sullivan (CDUSM Sullivan), Stone County Sheriff Mike Farmer, and an unknown doctor who Plaintiff asserts worked at SCRCF.

The United States of America and CDUSM Sullivan filed a Motion to Dismiss and Motion for Summary Judgment [31] that is fully briefed [32] [34] [35] [40] [47] and should be granted. The Court does not have subject matter jurisdiction to consider Plaintiff's action for money damages against the United States because Plaintiff did not exhaust administrative remedies before filing suit, a prerequisite under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671 *et seq.* The

Eighth Amendment claim asserted against CDUSM Sullivan should be dismissed because Plaintiff has no viable cause of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff filed a "Motion to Correct, Sever in Part, Retain in Joinder, and Hold in Severality" [34] as a response to Defendants' Motion to Dismiss and Motion for Summary Judgment [31], and this Motion should be denied.

## I.   BACKGROUND

According to his Complaint, on October 27, 2017, Plaintiff was taken into custody by the Drug Enforcement Agency and United States Marshals Service (USMS). [1] at 9. On February 5, 2018, Plaintiff pleaded guilty in this Court to one count of possession with intent to distribute 50 grams or more of actual methamphetamine and on February 5, 2018, he was sentenced to 120 months imprisonment and 5 years supervised release. [1] at 13; *see* Judgment [32] in *United States v. Ross,* 1:17-cr-113-LG-JCG-1 (S.D. Miss. July 27, 2018). Plaintiff was transferred from SCRCF in August 2018 and is now housed at the Federal Correctional Institution in Butner, North Carolina (FCI-Butner). [1-1] at 34.

In November 2020, Plaintiff filed a form, *pro se* prisoner Complaint [1] and 88 pages of exhibits. The exhibits included portions of his medical records and documents exchanged between him and the Department of Justice (DOJ). The Defendants named in the Complaint were the United States, CDUSM Sullivan, Sheriff Farmer, and numerous individuals who worked at SCRCF, including an

unknown doctor. Plaintiff voluntarily dismissed several Defendants, leaving the United States, CDUSM Sullivan, Sheriff Farmer, and an unknown doctor as Defendants.

Plaintiff's Complaint alleged that Defendants "denied, interfered with and/or delay[ed]" adequate medical treatment, which caused his health to deteriorate and ultimately caused stage 4 kidney failure. [1] at 8, 12. Plaintiff asserted that Defendants knew he was "a heart transplant recipient" who was prescribed the medication Tacrolimus, which is known to be associated with kidney disease. *Id.* at 11. Plaintiff maintained that he did not have kidney failure when he entered SCRCF as shown by the medical records he attached to his Complaint but was diagnosed with chronic kidney disease about two weeks after he left SCRCF. *Id.* at 13-14. Plaintiff alleged that Defendants are liable for the deterioration of his health because, while at SCRCF, he did not receive the correct dose of Tacrolimus and was not allowed to see a heart specialist who would have taken biopsies and adjusted that medication. *Id.* at 11, 14-15. Plaintiff claims that CDUSM Sullivan knowingly housed him in institutions in Mississippi that denied him timely and adequate medical care, consisting of SCRCF and a detention center in Madison County. *Id.* at 14.

In the portion of the form Complaint asking whether he exhausted administrative remedies before instituting this action, Plaintiff submitted that he filed two "Administrative Tort Claim[s]" and three "Remedy ID[s]." *Id.* at 18. Plaintiff seeks five million dollars as a remedy. *Id.*

On November 12, 2021, the United States and CDUSM Sullivan filed their Motion to Dismiss and Motion for Summary Judgment [31]. They first asserted that the FTCA claim against the United States must be dismissed because (1) the Court does not have subject matter jurisdiction to hear the claim because Plaintiff filed this action before his FTCA claim was finally denied, and less than six months after he presented a signed claim form to DOJ, and (2) the claim is barred by the independent contractor doctrine. [32] at 5-8. They next maintained that the *Bivens* claim against CDUSM Sullivan should be dismissed because "(1) A *Bivens* claim does not exist in this context; (2) CDUSM Sullivan had no personal involvement in any alleged denial of medical care to Plaintiff; and (3) CDUSM Sullivan is entitled to qualified immunity." *Id.* at 8.

After Plaintiff did not file a timely response to Defendants' Motion to Dismiss and Motion for Summary Judgment [31], the Court ordered Plaintiff to respond by January 12, 2022. Plaintiff responded by filing a two-and-a-half page "Motion to Correct, Sever in Part, Retain in Joinder, and Hold in Severality" wherein he disputed Defendants claim that the Court lacked subject matter jurisdiction over the FTCA claim and maintained that he "had already exhausted his Administrative Remedy Process though the BOP." [34] at 1-2. Plaintiff also concluded that his claim was not barred by the independent contractor doctrine. *Id.* at 3.

Plaintiff's "Motion to Correct, Sever in Part, Retain in Joinder, and Hold in Severality" [34] did not address Defendants' arguments for dismissing the Eighth

Amendment claim against CDUSM Sullivan. Plaintiff instead stated that he desired to sever the *Bivens* action against CDUSM Sullivan. *Id.* at 3.

Defendants filed a Reply on December 20, 2021, submitting that Plaintiff appeared to concede that the claims against CDUSM Sullivan should be dismissed, and that even if Plaintiff did not concede this, he failed to address Defendants' arguments and show why CDUSM Sullivan should not be dismissed. [35] at 2. Defendants emphasized that Plaintiff also largely failed to address the arguments for dismissing the FTCA claim against the United States and provided no evidence that he waited until his FTCA claim was finally denied by DOJ in writing before filing this action. *Id.* Defendants acknowledged that Plaintiff had filed grievances through BOP's administrative remedy program but submitted that exhausting BOP's administrative remedy program is not sufficient for purposes of an FTCA claim because "BOP would not be the appropriate agency." *Id.* at 2.

The Court ordered Plaintiff to file a written response by July 6, 2022, answering the question of whether he chose to dismiss the claims against CDUSM Sullivan with prejudice. Plaintiff filed a Response, indicating that he did not desire to dismiss CDUSM Sullivan because Sullivan denied him "from a heart transplant specialist/Clinic (Outside Hospital)" and "interfered with and/or delayed [him] timely and adequate medical care from Oct 27, 2017 to August 22, 2018." [40] at 1. Plaintiff maintained that CDUSM Sullivan failed "to timely schedule medical appointment/ and missed Dr. appointments" and failed to manage "and/or assist Ross in his heart

transplant appointments." *Id.* Plaintiff alleges that CDUSM Sullivan "was aware that a delay in medical treatment would diminishment [sic] kidney function." *Id.* Plaintiff attached to his Response more of his medical records. [40-1]. Plaintiff again did not address Defendants' position that he has no viable *Bivens* claim, and he did not address CDUSM Sullivan's asserted defense of qualified immunity.

## II. DISCUSSION

A.   Legal standards

1.   Dismissal under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for want of subject-matter jurisdiction falls under Federal Rule of Civil Procedure 12(b)(1). "The party which asserts jurisdiction bears the burden of proof for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). "A Rule 12(b)(1) motion should be granted only 'if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction.'" *Id.* (quoting *Castro v. United States*, 560 F.3d 381, 386 (5th Cir. 2009)). When evaluating such a motion, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2011).

2.    <u>Dismissal under Federal Rule of Civil Procedure 12(b)(6)</u>

"The pleading standards for a Rule 12(b)(6) motion to dismiss are derived from Rule 8 of the Federal Rules of Civil Procedure, which provides, in relevant part, that a pleading stating a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (citing Fed. R. Civ. P. 8(a)(2)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). In order to be facially plausible, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016). While a court must accept the facts in the complaint as true, "it will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quotation omitted). Mere labels and conclusions, or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders naked assertions devoid of further

factual enhancement." *Id.* (quotation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, a court may consider the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See Doe v. United States*, 853 F.3d 792, 800 (5th Cir. 2017), as revised (Apr. 12, 2017); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Filings by *pro se* litigants are to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).

3.    Dismissal under Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310-11 (5th Cir. 2017). To carry this initial burden, a movant "must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d

503, 511 (5th Cir. 2014) (quotation omitted).

If the movant carries its initial burden, the burden shifts to the nonmovant to show a genuine issue of material fact by going beyond the pleadings and designating specific facts showing that there is a genuine issue for trial. *See id.* (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Id.*

B.    <u>Analysis</u>

1.    <u>Plaintiff's FTCA claims against the United States should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction</u>

The United States moves for dismissal of the FTCA claim against it for lack of subject matter jurisdiction, asserting that Plaintiff did not wait until his claim was finally denied by DOJ, or until at least six months after he presented a signed Standard Form 95 claim form to DOJ, before he initiated this lawsuit. [32] at 5-6.

Absent a waiver, sovereign immunity shields the federal government and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). "Courts must strictly construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275

(5th Cir.1998). "In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees." *Id.* Under the FTCA, district courts

> shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1).

Before bringing an action for money damages against the United States under the FTCA, the claimant must first exhaust administrative remedies by presenting his claim to the appropriate federal agency. *See* 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 111 (1993). Exhaustion of administrative remedies is a jurisdictional prerequisite for FTCA claims that cannot be waived. *Coleman v. United States,* 912 F.3d 824, 834 (5th Cir. 2019). When a plaintiff fails to exhaust his administrative remedies, the district court does not have subject-matter jurisdiction over the FTCA claim. *Stilley v. Garland*, No. 21-60022, 2022 WL 1568363, at *1 (5th Cir. May 18, 2022) (citing *McNeil,* 508 U.S. at 113). The plaintiff "has the burden of proving that he exhausted his claim administratively," and the government is not obligated to "provide evidence that the plaintiff has *not* exhausted his administrative remedies." *Id.* (emphasis in original) (citing *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018)).

While "pleadings prepared by prisoners who do not have access to counsel [are] liberally construed," and some procedural rules "give way because of the unique circumstances of incarceration," the United States Supreme Court has held that "strict adherence to the procedural requirements" of the FTCA is required. *McNeil*, 508 U.S. at 113. In *McNeil v. United States,* the Supreme Court found that the district court properly dismissed a *pro se* prisoner's FTCA action where the prisoner filed the action before he presented a claim to the federal agency, even though the prisoner exhausted the administrative process before substantial progress was made in the litigation. *Id.*

Plaintiff filed his FTCA action prematurely because he filed before his FTCA claim had "been finally denied by the agency in writing and sent by certified or registered mail," and before giving DOJ six months to resolve his claim. 28 U.S.C. § 2675(a); *see Hanna v. United States*, No. 20-30581, 2021 WL 5237269, at *1 (5th Cir. Nov. 10, 2021). The parties do not dispute the following: Plaintiff attempted to submit an FTCA administrative claim on February 18, 2020, for $ 2.5 million, providing on the claim form that he had "suffered Stage 4 kidney failure that is now irreversable [sic] to the deliberate indiffrence [sic] by the U.S. Marshall [sic] and Federal Bureau of Prisons." [1-1] at 45; [32] at 5. A letter stamped July 20, 2020, from DOJ to Plaintiff provided that, "[a]s you have failed to sign your claim the claim is hereby rejected, and is being returned to you along with any attachments. Should you elect to resubmit your claim, please correct the error(s) . . . ." [1-1] at 41, 44; [32] at 5. Plaintiff

cured the defect by resubmitting a signed Standard Form 95 to DOJ. [1-1] at 42; [32] at 5-6. Defendants assert that Plaintiff's claim was received by DOJ on August 11, 2020, and Plaintiff does not dispute this date. [32] at 5-6. Plaintiff attached to his Complaint the Standard Form 95 he signed on July 23, 2020 and submitted to DOJ. [1-1] at 49. Less than four months after Plaintiff's signed Standard Form 95 was received by DOJ on August 11, 2020, Plaintiff filed this action. He signed his Complaint [1] on November 12, 2020, and it was received and filed by the Clerk of Court on November 23, 2020.

Plaintiff's claim was not "deemed to have been presented" until it was signed. *See* 28 C.F.R. § 14.2(a). DOJ's rejection of Plaintiff's claim because it was not signed was not a final agency denial. *See Smith v. United States*, No. CV 19-238-JWD-RLB, 2019 WL 5103805, at *4 (M.D. La. Oct. 11, 2019) (finding returned claim was not an agency denial); *Hood v. Att'y Gen.*, No. 1:17-CV-178, 2019 WL 3729452, at *2 (E.D. Tex. June 10, 2019), report and recommendation adopted, No. 1:17-CV-178, 2019 WL 3717656 (E.D. Tex. Aug. 6, 2019) (finding plaintiff did not complete administrative remedy process because he did not resubmit his rejected claim). Plaintiff presented a signed Standard Form 95 to DOJ on August 11, 2020, and then filed suit in November 2020, before DOJ's disposition of Plaintiff's claim was due in February 2021.

Plaintiff has failed to come forward with evidence that his claim was finally denied in writing by DOJ before he filed this suit. In fact, Plaintiff never alleges that he received a final denial from DOJ before he instituted this action, or at any time

thereafter. He claims instead that the Court has subject matter jurisdiction because of 18 U.S.C. § 3231, a criminal statute that does not apply in this civil action. [34] at 1. He also asserts he "already exhausted his Administrative Remedy Process through the BOP." *Id.* at 2. Completing BOP's administrative remedy process, however, is not the same as presenting a signed FTCA claim to DOJ and awaiting a final denial. *See Lopez-Heredia v. Univ. of Tex. Med. Branch Hosp.*, 240 F. App'x 646, 647 (5th Cir. 2007) (finding "[t]he BOP's FTCA claims procedure is separate from the BOP's administrative remedies procedure" and citing 28 C.F.R. §§ 543.30-543.32)."

Plaintiff's FTCA claim against the United States should be dismissed without prejudice under Federal Rule of Civil Procedure 12(b)(1). Allowing Plaintiff an opportunity to amend to attempt again to pursue his FTCA claim in this action would be futile because "[a]n action that is filed before the expiration of the six-month waiting period . . . cannot become timely by the passage of time after the complaint is filed." *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995), *on reh'g in part*, 81 F.3d 520 (5th Cir. 1996) (citation omitted) (citing *McNeil,* 508 U.S. at 111-12). It is unnecessary for the Court to proceed to a Federal Rule of Civil Procedure 56 analysis and express an opinion on whether Plaintiff's FTCA claim is barred by the independent contractor doctrine.

    2.    Plaintiff has no viable claim under *Bivens,* and the Eighth Amendment claim against CDUSM Sullivan should be dismissed under Federal Rule of Civil Procedure 12(b)(6)

The Complaint asserts a federal constitutional claim for monetary damages

against CDUSM Sullivan in his individual capacity for allegedly denying, interfering with, and delaying Plaintiff's medical treatment while Plaintiff was housed at SCRCF. [1] at 8. Plaintiff's Complaint provides that his claim is pursued under *Bivens. Id.* at 2. Defendants argue that the Court should decline to extend *Bivens* to Plaintiff's claim against CDUSM Sullivan because this is a "new context" claim for purposes of *Bivens*, and special factors counsel against expanding *Bivens* to Plaintiff's claim.

In *Bivens,* the United States Supreme Court implied a Fourth Amendment claim for damages against federal officers for unreasonable search and seizure even though no federal statute authorized such a claim. *See Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). Since *Bivens* was decided in 1971, the Supreme Court has authorized an implied damages remedy against federal officers for constitutional violations in only two other cases. *See Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment claim for failure to provide adequate medical treatment to inmate); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Due Process claim for gender discrimination); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (discussing *Carlson, Davis,* and *Bivens*).

In the decades since, "the [Supreme] Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Abassi*, 137 S. Ct. at 1865-69 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). The Supreme Court has even "gone so far as to observe that if the Court's three *Bivens* cases [had] been . . . decided

14

today, it is doubtful that [the Court] would have reached the same result." *Hernandez*, 140 S. Ct. at 743 ("for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*"). The rationale is that "Congress is best positioned to evaluate whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government based on constitutional torts." *Id.* (internal quotation marks omitted).

The decision whether to recognize a new *Bivens* action has two parts. *Zummer v. Sallet*, 37 F.4th 996, 1012 (5th Cir. 2022) (citing *Hernandez*, 140 S. Ct. at 743). First, the district court considers whether the claim arises in a "new context" or involves a "new category of defendants'" *Id.* (citing *Hernandez,* 140 S. Ct. at 743 and *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). "Second, if the context is new, courts must ask whether there are any 'special factors that counsel hesitation' in recognizing the new cause of action." *Id.* (quoting *Hernandez,* 140 S. Ct. at 743 and *Abassi,* 137 S. Ct. at 1857). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abassi,* 137 S. Ct. at 1858.

To determine whether Plaintiff's case presents a new context, the Court "must determine whether [the case] falls squarely into one of the established *Bivens* categories, or if it is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021) (quoting *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020)).

Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area: (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment, *see Bivens*, 403 U.S. at 389–90, 91 S. Ct. 1999; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment, *see Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979); and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980).

Virtually everything else is a 'new context.' *See Abassi*, 137 S. Ct. at 1865 (explaining that 'the new-context inquiry is easily satisfied'). As the Supreme Court has emphasized, our 'understanding of a 'new context' is broad.' *Hernandez v. Mesa*, -- U.S. --, 140 S. Ct. 735, 743, 206 L.Ed.2d 29 (2020). That's because 'even a modest extension' of the *Bivens* trilogy "is still an extension." *Abassi*, 137 S. Ct. at 1864. And to put it mildly, extending *Bivens* to new contexts is a 'disfavored judicial activity." *Id.* at 1857 (quotation omitted).

*Oliva,* 973 F.3d at 442.

Without providing an exhaustive list, the Supreme Court has observed that

A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality of specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."

*Abbasi,* 137 S. Ct. 1859-60.

Of the three cases in which the Supreme Court recognized a *Bivens* remedy, Plaintiff's case is most like *Carlson* because the plaintiff in *Carlson* alleged deliberate indifference to a federal prisoner's medical care in violation of the Eighth Amendment. However, "it is not enough even if 'a plaintiff asserts a violation of the

same clause of the same amendment in the same way" as one of the *Bivens* trilogy. *See Oliva,* 973 F.3d at 442 (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)); *see also Nabaya v. Bureau of Prisons*, No. 3:19-CV-215-L-BN, 2020 WL 7029909, at *4 (N.D. Tex. Oct. 7, 2020), report and recommendation adopted, No. 3:19-CV-215-L-BN, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020) (finding Eighth Amendment claim for deliberate indifference in allegedly failing to provide dental care to a federal prisoner presented a new context because it was meaningfully different from *Carlson*).

Plaintiff does not try to liken his case to *Carlson,* because he has not responded to the argument that his claim against CDUSM Sullivan is not viable under *Bivens*. It was alleged in *Carlson* that a federal inmate died because federal prison officials, being apprised of the prisoner's chronic asthma condition,

> nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthma attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.

*Carlson,* 446 U.S. at 16 n.1.

Finding meaningful differences between this case and *Carlson* is consistent with the Fifth Circuit's view in *Oliva* that "virtually everything else is a 'new context.' " *Oliva,* 973 F. 3d at 442 (citing *Abassi*, 137 S. Ct. at 1865). The Fifth Circuit in *Oliva* described the circumstances of *Carlson* as "failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment." *Id.*

Plaintiff did not have mistreated chronic asthma. He did not die in prison. He was a pretrial detainee at the time he was at SCRCF, while the prisoner in *Carlson* was a postconviction inmate. The prisoner in *Carlson* was housed at a federal correctional center, while SCRCF is not a federal correctional institution. This non-exhaustive list of meaningful differences meets the "easily satisfied" "new-context inquiry." *Id.* at 442; *see also Watkins v. Martinez*, No. 20-40781, 2022 WL 278376, at *1 (5th Cir. Jan. 31, 2022) (finding no *Bivens* remedy in Eighth Amendment case alleging excessive force because "Watkins did not die in prison, Watkins did not have mistreated chronic asthma, and *Carlson* did not involve an inmate's unwillingness to be housed with another inmate.").

Because Plaintiff's FTCA action arises in a new context for purposes of *Bivens,* the Court moves to the second consideration, whether "special factors" counsel hesitation to extend *Bivens* to Plaintiff's claim. The existence of the FTCA counsels hesitation against extending *Bivens*. *See Cantú*, 933 F.3d at 423 (citing 28 U.S.C. § 2680(h)). The fact that BOP has an administrative remedy program counsels hesitation against extending *Bivens*. *See Malesko*, 534 U.S. at 74; 28 C.F.R. § 542.10 (2001); *Watkins,* 2022 WL 278376, at *1 (finding FTCA and BOP Administrative Remedy Program counseled against expanding *Bivens*). The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, which was enacted some fifteen years after *Carlson* was decided, counsels hesitation against extending *Bivens*, and the PLRA "does not provide for a standalone damages remedy against federal jailers." *See Abassi,* 137 S.

Ct. at 1865. "Congress has legislated (post-*Carlson*) regarding prisoners' rights and has had the opportunity to extend *Carlson* to other 'kinds' of prisoner claims under the Eighth Amendment. But it has not done so." *Springer v. United States*, No. 21-11248, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (finding inmate claiming injury from exposure to asbestos and mold during his job at a federal correctional institution had no remedy under *Bivens*). "Whether and to what extent *Bivens* extends to the kind of claim [Plaintiff] advances is an issue best left for Congress to address." *Id.*

The Court need only review the Complaint and its attachments to determine that the claim against CDUSM Sullivan presents a new context for purposes of *Bivens,* and special factors counsel hesitation against expanding *Bivens* to Plaintiff's claim. Plaintiff cannot cure the defects in his claim against CDUSM Sullivan by amending his Complaint. Any constitutional claim for money damages advanced against CDUSM Sullivan in his individual capacity would suffer the same defect as the originally pleaded *Bivens* claim. *Landis v. Martin*, No. 3:19-CV-177-DPJ-FKB, 2020 WL 5270021, at *3 (S.D. Miss. Sept. 4, 2020), appeal dismissed, No. 20-60939, 2021 WL 5174305 (5th Cir. Nov. 5, 2021) (finding "the new claims Landis hopes to assert under *Bivens* suffer the same defect as his originally pleaded *Bivens* claim—he is attempting to apply that law to a new context, and special factors counsel hesitation in expanding *Bivens* to this context"). The Eighth Amendment claim against CDUSM Sullivan should be dismissed under Federal Rule of Civil Procedure

12(b)(6). It is unnecessary for the Court to proceed to a Federal Rule of Civil Procedure 56 analysis and express an opinion on whether CDUSM Sullivan would be entitled to qualified immunity if Plaintiff did have a viable *Bivens* claim.

## IV. <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

Within fourteen days after being served with a copy, any party may serve and file with the Clerk of Court written objections to this Report and Recommendation. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection. L.U.Civ.R. 72(a)(3).

A district judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs.*

*Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED**, this the 8th day of August, 2022.

_s/_ *Bradley W. Rath*

HONORABLE BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

21